## THE H. WALES LINES COMPANY *vs.* HARTFORD CITY GAS LIGHT COMPANY.

First Judicial District, Hartford, January Term, 1915.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The plaintiff, a building contractor, sought to recover damages for injuries to a pumping-station which it had nearly completed for the city of Hartford for use in connection with its sewer system, and which, as alleged by the plaintiff, were caused by an explosion of illuminating-gas which had been allowed, through the negligence of the defendant, to escape from its works or conduits nearby into the public sewer with which the pumping-station was connected. *Held* that the evidence in support of the plaintiff's contention as to the cause of the explosion, although circumstantial in character, was sufficient, in connection with affirmative expert testimony, to entitle the plaintiff to go to the jury, and that a motion for the direction of a verdict for the defendant was properly denied.

Where the facts are undisputed and the only issue before the jury is one of law, the trial court should direct a verdict; but where, as in the present case, the facts are disputed, the refusal of the trial court to direct a verdict is not a ground of appeal, not only because there is no statutory sanction for such a procedure, but because the rights of litigants can be and are as fully protected by General Statutes, § 805, allowing an appeal from the denial of a motion to set aside an adverse verdict.

The defendant complained that the charge of the court permitted the jury to impute actionable negligence to it upon proof of the mere fact of the explosion. *Held* that the charge was not open to this objection, nor did it magnify and give an undue probative value

to the claims of the plaintiff, and disparage those of the defendant, as the latter contended.

A charge which sufficiently covers the subject-matter of the requests need not follow their language.

The title to a pumping-station during its erection and until its completion and acceptance by the city, pursuant to the contract, is in the contractor, who is legally bound to repair any damage negligently done to it by third persons, and is entitled to recover of them the cost of such repairs.

An expert witness cannot be required on cross-examination to determine the character or nature of a substance by a method which he has not professed to be adequate for such determination.

Argued January 6th—decided February 23d, 1915.

ACTION to recover damages for injuries to a pumping-station under erection by the plaintiff for the city of Hartford, which were alleged to have been caused by an explosion due to the negligence of the defendant, brought to the Superior Court in Hartford County and tried to the jury before *Greene, J.;* verdict and judgment for the plaintiff for $1,804, and appeal by the defendant. *No error.*

In October, 1912, the plaintiff entered into a contract with the city of Hartford whereby it agreed to erect, upon land of the latter, a pumping-station, for use at times of high water in the Connecticut River in connection with its sewer system, and to deliver the same complete to the city on or before a prescribed date, for the contract price of $33,840, and certain additional amounts under certain conditions. By the terms of the contract the plaintiff was to do all the work and furnish all the material, and full payment of the contract price was not to be made until after completion and acceptance. The contract contained a provision for partial payments as the work progressed; but the finding does not disclose that any such were made.

On May 23d, 1913, when the structure was nearly, but not quite, completed, and work upon it was in

progress, an explosion occurred in its basement, by force of which it was seriously injured. The plaintiff repaired the damage thus caused, and this action was brought to recover the cost thereof.

The defendant is and long has been engaged in the manufacture, distribution and sale of illuminating-gas. Its manufacturing plant is located near the pumping-station, and its distribution mains and pipes extend under ground through Potter Street, adjoining which both the plant and station are situated. A city sewer also extends through the street. At the time of the explosion this sewer had an open connection with the basement of the pumping-station where the explosion occurred.

The plaintiff alleged and claimed to have established: (1) that the explosion was caused by illuminating-gas escaped from the defendant's plant or conduits into the sewer, or there given off by by-products of the defendant's works similarly escaped or permitted to flow into the sewer, and thence escaped through the open passage into the basement of the pumping-station; and (2) that the presence of this gas in the sewer and basement was due to the defendant's negligence.

Upon the trial the plaintiff offered one Phelps as a witness, to testify to the extent of the damage done to the station by the explosion, as furnishing a basis for the assessment of damages. This evidence was objected to upon the ground that as the building stood upon land of the city of Hartford its ownership was in the city and not in the plaintiff, and that, therefore, the plaintiff could not recover for the injuries to it or to the materials which had gone into its construction. The evidence was admitted.

The plaintiff also offered Professor Gill as an expert witness, and he testified at length touching the presence

of illuminating-gas in the sewer, and concerning drip-oil and wash-water, by-products of gas manufacture, and as to the character of a certain liquid produced and identified as having been obtained from the sewer, and pronounced by him drip-oil. He testified that he arrived at this conclusion by applying the tests of smell, appearance, behavior under distillation, and specific gravity. Upon cross-examination counsel produced a can of liquid, not identified but said to be a substance used or produced in the defendant's process of gas manufacture, and asked the witness to smell of it and say whether or not it was drip-oil. Upon objection the inquiry was excluded as not being proper cross-examination.

*John T. Robinson* and *Francis W. Cole*, for the appellant (defendant).

*William F. Henney* and *Cornelius J. Danaher*, with whom was *Stewart N. Dunning*, for the appellee (plaintiff).

PRENTICE, C. J. The defendant complains of the court's refusal to direct a verdict in its favor, of certain portions of the charge, and of two rulings upon the admission of testimony.

The motion for the direction of a verdict was properly denied. The issues involved the determination by the jury of the cause of the damage alleged to have been done to the pumping-station, and the defendant's legal responsibility for that cause. The plaintiff averred, and offered testimony, covering between five hundred and six hundred pages of the printed record, to establish that the cause was illuminating-gas escaped into the public sewer from the defendant's works or conduits, or given off by other products of

the defendant's gas manufacture similarly escaped, and that the presence of this gas in the sewer was due to the defendant's negligence. These propositions the defendant undertook to refute. The first of the two propositions was the fundamental one. If established, the evidence pointed the road to the second so clearly that the jury might well take it. The evidence offered to establish this first was circumstantial as distinguished from direct, but was none the less competent on that account, and it was of such a character that an eminent expert did not hesitate to assert and stoutly maintain that the cause of the explosion was illuminating-gas. This evidence was sufficient to entitle the plaintiff to go to the jury upon it, unless we are prepared to say that the conclusion contended for was one which a jury could not reasonably accept. The evidence does not justify us in taking that extreme position. The case is one presenting not so much a conflict of direct testimony as a disagreement in the inferences to be drawn from facts established. Here the conflict is indeed a sharp one, but it is for the most part one of reasoning from circumstances and conditions to conclusions. The question for the jury was not so much what direct evidence to believe, as what scientific theory to adopt or inferences of fact to draw. This is a field which we should enter upon with caution, lest we forget how circumscribed our office therein is, and be misled into setting up our own judgment as furnishing the standard for the determination of sane reasoning.

A considerable number of objections are addressed to the charge. No one of them directly concerns the law applicable to the case. Apparently the defendant can find no criticism of the court's instructions as to the controlling principles of law. Its criticisms all relate to that part of the charge in which the claims

of the parties based upon the evidence are summarized, and the attention of the jury called to the particular portions of the evidence relied upon in support of the several claims. This part of the charge discloses a painstaking attempt on the court's part to assist the jury by an orderly statement of these claims, and of the reasons therefor as advanced by counsel.

A few of the assignments of error in effect accuse the court of partiality in certain of its statements of claims and evidence, in its assumption of facts not established, and in its disparagement,· express or implied, of the defendant's contentions. Our examination of the charge in connection with the evidence satisfies us not only that these accusations are unfounded, but also that the court was eminently successful in preserving an attitude of strict impartiality and fairness. Its effort plainly was to submit the case just as counsel had presented it, and it requires an acutely critical interpretation of the court's language and subtle refinement of criticism to give color to any other view.

These criticisms aside, the assignments of error touching the charge all gather about two propositions: (1) that the jury were in effect permitted to impute actionable negligence to the defendant upon the strength of no other proof than the fact of the explosion; and (2) that the court improperly included, in its summary of the circumstances in evidence relied upon by the plaintiff to establish that the cause of the explosion was the defendant's illuminating-gas, certain circumstances that furnish no substantial support for such a conclusion.

The first of these propositions harks back to the contention of the defendant, made in support of its motion to direct the verdict, that the plaintiff was without proof upon which a verdict in its favor could be founded, and rests upon that view of the case which

we have already seen to be unfounded. The *res ipsa loquitur* doctrine was neither invoked by the plaintiff nor countenanced by the court. On the contrary, the plaintiff rested its case upon proof of circumstances and conditions claimed to establish its allegations, and the court carefully confined the jury to a consideration of that proof, and authorized a plaintiff's verdict only in the event that it thereby established the alleged cause and the responsibility for negligence. The defendant indeed asserted, and still aserts, that the proof adduced was inconsequential, so that nothing was left of the plaintiff's case but the fact of the explosion. But the trial court did not concur in that view, the jury did not, and we do not.

The defendant's claim under the second head is that harmful error was committed by the court's inclusion—in its recital of the circumstances in evidence relied upon by the plaintiff to establish the alleged cause of the explosion—of circumstances and conditions which the defendant says were not in fact indicative of the presence of illuminating-gas, since by such inclusion a dignity and character was given thereto as possessing probative value which they did not deserve in view of the conditions shown. It is said that in this way the appearance of substantial importance was given to that which possessed no true significance in aid of the plaintiff's contention, and the weight of the court's recognition of value accorded to that which had no true value when rightly appreciated.

This claim rests in part upon the false assumption that, by a review of reasonable claims of counsel based upon evidence, whether they be strong or weak, added weight is, or can reasonably be understood to be, given to them; and in part upon an attempt to disassociate the evidential value of one circumstance, taken by itself, from its significance when taken in

connection with a group of other related circumstances. The defendant's real difficulty here, as in the other aspects of the case already considered, arises from the fact that it is unable to see in the plaintiff's evidence anything in the nature of proof of the facts alleged, whereas the trial court correctly appreciated that the jury might reasonably do so.

The failure of the court to instruct the jury as requested in each of three requests is complained of. Although the court did not charge in terms as requested, the defendant has no just cause for complaint. The subject-matter of the requests was sufficiently covered, and the rights of the defendant fully protected in the charge as made.

The testimony of the witness Phelps was properly received. True it is that buildings are ordinarily considered a part of the realty, with the title thereto in the owner of the land upon which they stand. This status may, however, be changed by the agreement of the parties, in so far at least as all persons save innocent purchasers from the landowner are concerned. *Radican* v. *Hughes*, 86 Conn. 536, 543, 86 Atl. 220; *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 519, 521, 23 N. E. 327; *Dame* v. *Dame*, 38 N. H. 429, 430; *Sisson* v. *Hibbard*, 75 N. Y. 542, 546; Minor & Wurts on Real Property, § 25.

The contract under which the present structure was being erected accomplished this result. By its terms a license was given to the plaintiff to enter upon the land and erect the structure thereon subject to the conditions created by the contract. These conditions involved the absolute control of the structure by the plaintiff, and title in it until it should pass to the city after its completion and acceptance. Title in the city during the progress of the work is entirely foreign to the situation which the contract created.

Furthermore, the plaintiff was under contract to erect and deliver to the city a completed building as a condition of its right to receive the agreed price of its construction, and any damage to the structure before its completion would, for ought that appears in the finding, directly and completely inure to the injury of the plaintiff, as it did in fact. It was under contract to produce the finished structure, had entered into a bond to do so, and could not receive the contract price until that result was achieved. In such a situation it was under the necessity of repairing the damage done in order to restore itself to the position it was in before the explosion. *School District No. 1* v. *Dauchy*, 25 Conn. 530, 535; *Adams* v. *Nichols*, 36 Mass. (19 Pick.) 275, 278; *Milske* v. *Steiner Mantle Co.*, 103 Md. 235, 241; *Tompkins* v. *Dudley*, 25 N. Y. 272, 273. It was the party injured, and the one to be compensated, if compensation was due to anybody.

The request made of Professor Gill was one which the cross-examiner was not entitled to make for the sufficient reason, among others, that it called upon him to determine the character of the contents of the can by a method which he had not professed to be adequate for such determination.

No objection was made by the plaintiff's counsel to the assignment of error based upon the court's refusal to direct a verdict, and we have, therefore, not declined to consider it. Lest, however, our action in so doing may be taken to imply our approval of that procedure, we feel constrained to add that the assignment was improperly made. In *McVeigh* v. *Ripley*, 77 Conn. 136, 141, 58 Atl. 701, and *Bradbury* v. *South Norwalk*, 80 Conn. 298, 300, 68 Atl. 321, we held that such assignment was proper where the facts were undisputed, and there was, therefore, no issue of fact, but only one of law. In a number of other cases, where

the parties were at issue upon the facts, we have said that the court ought upon the evidence to have directed a verdict; but in no one of them have we said that failure to take that course was appealable error. *Ward* v. *Metropolitan Life Ins. Co.*, 66 Conn. 227, 241, 33 Atl. 902; *Allen* v. *Ruland*, 79 Conn. 405, 413, 65 Atl. 138; *Fay* v. *Hartford & Springfield Street Ry. Co.*, 81 Conn. 330, 338, 71 Atl. 364; 82 Conn. 471, 474, 74 Atl. 779.

In the last two cases error in failing to direct a verdict was assigned, but this assignment was in each case accompanied by one from the denial of a motion to set aside the verdict, and the judgment of error was properly predicated upon the latter assignment. This latter form of procedure is the one prescribed by our statute for the protection of a defendant in the ordinary situation like that here presented, where the parties are in contention over what the evidence establishes. A review of the action of the court in such case requires a certification to us of the evidence. We not only have no statutory authority authorizing an appeal from a refusal to direct a verdict, but none for the certification of evidence except after a denial of a motion to set aside the verdict, and in connection with an appeal from such denial.

There are strong practical reasons why the right of appeal should wait upon proceedings after verdict. The verdict quite possibly will set at rest any question as to the propriety of the court's action which might arise were the verdict directed and thus avoid further litigation, whereas, if the court, held to strict accountability for correct action, errs in its judgment that a reasonable foundation for a plaintiff's verdict does not exist, either expensive litigation or injustice must result. Our statute permits a court to act with a measure of freedom in committing issues of fact to the jury where the insufficiency of the plaintiff's evidence is not clear,

and at the same time preserves to it a full control over the result by the procedure prescribed in § 805 of the General Statutes. This procedure carefully and completely guards the defendant's interests, is adequate in the provision of the steps to be taken, and, in view of the absence of all provision for an appeal from refusals to direct verdicts, must be taken as providing the only course to be pursued where the appeal would call for an examination of the evidence.

It was early questioned whether the courts of this State possessed the power to direct verdicts. In *Bartholomew* v. *Clark*, 1 Conn. 472, 480, it was held that they had such power in a proper case. That power has been exercised ever since. *People's Savings Bank* v. *Norwalk*, 56 Conn. 547, 556, 16 Atl. 257. This incident of judicial supervision has, however, been looked upon rather as a power to be used in the exercise of a sound discretion than as imposing a duty to be performed with precision and at the risk of committing error if a straight line of strictly correct conduct is not followed. The right to exercise the power carries with it the moral duty to do so in proper cases in the interests of the speedy and economical administration of justice, and our decisions have been to that effect. But we have never recognized the sterner duty, or held trial judges to that strict accountability for the submission of cases to the jury which the right of appeal for refusal to direct would naturally involve. Evidently our statute was framed to harmonize with this view.

There is no error.

In this opinion the other judges concurred.